SAMUEL J. COONEY *vs.* PORTLAND TERMINAL COMPANY.

Cumberland.    Opinion November 18, 1914.

*Assumption of Risk.    Exceptions.    Instructions.    Master.    Negligence.    Notice.*
*Servant.*

1.   The duty of inspection by an employer of the appliances used by his employee does not extend to the small and common tools in every day use, of the fitness of which the employee using them may reasonably be supposed to be a competent judge.

2.   Want of reasonable care on the part of the employer cannot be predicated on the fact that he failed to warn a servant mechanic ordinarily intelligent and experienced that bits of steel were liable to fly from the mushroomed head of a cold chisel when struck with a hammer.

3.   Assumption of risk is voluntary.    But when nothing appears to the contrary, an employee is deemed to have agreed to take upon himself the risk of injury from dangers visible and appreciated.    He may terminate the agreement by giving notice to the employer that he will no longer bear the risk.    The evidence does not take this case out of the ordinary rule.

On exceptions by plaintiff.    Exceptions overruled.

This is an action on the case to recover damages for personal injuries alleged to have been sustained by reason of the negligence of the defendant.    Plea, general issue.    At the conclusion of the plaintiff's evidence, the presiding Justice ordered a nonsuit, and the plaintiff excepted to said order.

The case is stated in the opinion.

*Dennis A. Meaher*, for plaintiff.

*Symonds, Snow, Cook & Hutchinson*, for defendant.

SITTING:   SAVAGE, C. J., CORNISH, BIRD, HANSON, PHILBROOK, JJ.

SAVAGE, C. J.    Case to recover for personal injuries alleged to have been caused by the negligence of the defendant.    A nonsuit was ordered, and the case comes up on plaintiff's exceptions to that order.

The plaintiff was employed by the defendant as a carpenter in its car repair shops, and had been so employed four or five years. In the course of the work in the carpenter's department it became necessary occasionally to cut off rivets with cold chisels. This work was customarily done by the carpenters as a part of their work. The plaintiff had on several occasions done this kind of work, either holding a chisel, or striking with a hammer, sometimes one, sometimes the other.

Just prior to the accident the plaintiff was at work with a fellow workman attaching a safety appliance to a car. It became necessary to cut off some rivets, so as to remove the grab iron which was fastened by them to the car. The plaintiff without special instructions, looked around for a cold chisel but could find none. Then he went to the foreman and asked for one. The foreman directed him to wait until another workman who was using a chisel had finished with it. He did so. He then took the chisel, and he and the man that worked with him proceeded to cut off a rivet with it. They alternated, first one holding the chisel and the other striking with the hammer, and then reversing. While the plaintiff was striking a piece of steel was broken from the head of the chisel and flew into his eye. The chisel itself was exhibited at the argument in this Court. Its head appeared somewhat battered or "mushroomed."

A committee, of which the plaintiff was one, had sometime previously complained to the defendant's superintendent of the poor condition of the tools, including the chisels, but the case does not show that any particular defects were pointed out. For several years before his employment by the defendant as a carpenter, the plaintiff had been a car inspector and car repairer. His testimony shows him to be a mechanic of at least ordinary intelligence.

In its general aspects, this case seems to fall within the principles of the rules stated in *Golden* v. *Ellis*, 104 Maine, 177, and *L'Houx* v. *Construction Company*, 111 Maine, 101. Both of these cases are somewhat analogous to the one at bar. It is too well settled to require the citation of authorities, that a servant assumes the risk of obvious dangers, those which he knows and appreciates, and those which by reasonable care and attention he ought to know and appreciate. In *Golden* v. *Ellis*, it was reaffirmed that a servant assumes the risks of known defects in machinery, tools, appliances, etc., or of improper appliances furnished for a particular task, or where no proper appliance is furnished, although the defect or danger results from the

negligence of the master; and that if a servant continues in the service of his employer after he has knowledge of any unsuitable appliances in connection with which he is required to labor, and it appears that he fully appreciates the danger, he will be deemed to have assumed the risk. And in the same case, the court quoted with approval the rule that "a servant assumes the risks of injuries from simple and ordinary appliances and methods, the nature of which he understands, or which is easily understood. It is a part of this doctrine that the duty of inspection by an employer, of the appliances used by his employees, does not extend to the small and common tools in every day use, of the fitness of which the employees using them may reasonably be supposed to be competent judges."

In *L'Houx* v. *Construction Company*, the Court said,—"It would seem to be a matter of common knowledge that when steel hammers are struck with great force upon steel chisels or drills held against iron surfaces, chips or particles of steel are liable to break off from the chisel, as well as from the hammer or the iron surface, and fly up and about," and it was held that the plaintiff in that case assumed the risk of such danger.

It would seem that upon the authority of these cases that the defendant did not owe to the plaintiff the duty of inspecting such tools as a cold chisel, the condition of which would ordinarily be as apparent to a servant as it would be to a master; and that the risk of particles flying off from a chisel when struck by a hammer would be so obvious to an ordinarily intelligent and experienced mechanic such as the plaintiff was, that he should be deemed to have assumed it.

But the plaintiff contends that these rules as to negligence of master and assumption of risk by a servant are not applicable in this case. He claims, and has alleged in his writ, that by reason of his inexperience, it was the duty of the defendant to instruct him in regard to the danger of being hurt by flying chips of steel or iron. We think otherwise. We think that want of reasonable care on the part of the master cannot be predicated on the fact that the master failed to warn a servant mechanic of the age, intelligence and experience of this plaintiff that bits of steel were liable to fly from the mushroomed head of a cold chisel when struck with a hammer.

The plaintiff also contends that the general rule of assumption of risk is not applicable in this case for the further reason that notice of the defective condition of the chisel had been given to the master, and

the master had promised to repair it. And he claims that the jury would have been warranted in finding that the plaintiff had on that account effectually thrown off the risk he would otherwise have been deemed to have assumed; in other words, that in this case he did not in fact assume the risk. *Dempsey* v. *Sawyer*, 95 Maine, 295. A sufficient answer to this contention is that it does not appear that the master was notified of any particular defects of this or any other chisel. Nor does it appear that the master made any promise to repair them.

Assumption of risk is voluntary. When nothing appears to the contrary, the servant is understood to agree to take upon himself the risk of injury from dangers visible and appreciated. It is competent for the servant to cancel that agreement and thereby let the risk fall back on the master. He may terminate the implied agreement by giving notice to the master that he will no longer bear the risk. And the master may promise to repair, which may be evidence of an agreement on his part to assume the risk. In every case it is a question for the jury, whether the servant has terminated his agreement to assume the risk. *Dempsey* v. *Sawyer*, supra. So, whether the master has agreed to assume the risk, thereby relieving the servant. But there is nothing here to take the case out of the ordinary implication of assumption of risk on the part of the servant. Nor is there anything which would warrant a jury in finding that the plaintiff had not assumed the risk, or that the defendant had assumed it.

The presiding Justice did not err in ordering a nonsuit.

*Exceptions overruled.*