SPECTOR, Judge.
The plaintiff in a wrongful death action has appealed from a judgment for the defendant, Midyette-Moor, Inc., which was entered by the trial judge notwithstanding a jury verdict for the plaintiff; also ap *179 pealed is a final summary judgment in favor of the defendant, Midyette-Moor Insurance Agency, Inc.
Plaintiff sued both defendants, individually and in her representative capacity, alleging that the defendants negligently constructed and maintained a stairway in a building owned by one of them and partially leased by the other. The stairway led from the ground floor lobby to the second floor where the insurance agency had its offices and was one of the approaches provided for the use of persons seeking to transact business with the insurance agency. Both of the defendant corporations are controlled by substantially the same persons.
Appellant’s husband died as a result of injuries he sustained when he fell while going down the stairway in question. He had gone into the insurance agency’s office under the mistaken belief that his insurance was being handled through that agency and upon learning of his error, he left and started to walk down the stairs although he had initially arrived on the second floor via the elevator.
In setting aside the jury verdict for the plaintiff, the trial judge stated as his reason that there was not sufficient evidence to support the jury verdict. Appellant, of course, urges reversal contending that there was sufficient evidence based upon which the jury could have found for the plaintiff on either of two theories of negligence encompassed by the pleadings. First, it is urged that the jury could have found from the evidence that the decedent struck his head on the ceiling of the staircase and thereafter fell forward striking his head against the floor with such force as to cause his injuries which resulted in death. Secondly, appellant urges that the jury could have found that the decedent fell, slipped or slumped at a point where there was no handrail for him to grasp and such lack of handrail constituted negligent construction or maintenance of the staircase and was a direct and proximate cause of the decedent’s injuries.
We think the trial judge correctly held there was no evidence to support a verdict on the theory of negligent failure to provide a handrail in the stairway as required by a Florida Industrial Commission safety rule. The only evidence as to where the decedent fell shows that he fell on the seventh or eighth step coming down from the landing, and the photographs of the scene where the accident occurred show that there was a handrail adjacent to the seventh and eighth steps which came on down to the bottom floor level.
In Alford v. Meyer, 201 So.2d 489, this court held that the violation of a safety rul.e of the Florida Industrial Commission relating to the construction of scaffolds was prima facie evidence of negligence where the plaintiff fell from a scaffold which allegedly did not meet the standards of the Commission’s safety rule. In the instant case, the evidence shows that at the place where Scott fell a handrail was present. Thus, the rule of the Alford case, supra, would be inapplicable to the facts here. In Alford, supra, the plaintiff was an employee of the defendant employer and was clearly within the class of persons sought to be protected by the Commission’s safety rule. Hence, we held that the violation for noncompliance with the rule was prima facie evidence of negligence. Here, however, plaintiff’s decedent was not an employee of defendant and thus not within the class of persons that the safety rule was directly intended to protect. The Commission’s safety rule prescribing handrails was nonetheless admissible as evidence of what a reasonable and prudent person might provide with respect to the stairway in question. See Tampa Drug Co. v. Wait, 103 So.2d 603 (Fla.1958), and a discussion of the reason for treating safety rules and standards as at least evidence of negligence found in City of Dothan v. Hardy, 237 Ala. 603, 188 So. 264 (1939).
*180 It is suggested by appellant’s reply brief that the Commission’s rule on handrails is applicable because it provides for handrails on both sides of stairways which are in excess of 44 inches wide, whereas the evidence here reveals them to be on one side of the stairway only. But nowhere in the record do we find any evidence that the stairways width dimension was in excess of 44 inches nor has appellant directed us to such evidence by his brief.
Moreover, as we view the record in this case, there is no evidence to support a finding of proximate cause between decedent’s injuries and the absence of handrails, had the latter been shown. The testimony of the only eyewitness to the accident fails to indicate that decedent attempted to grasp a handrail in an effort to steady himself. In absence of evidence to that or similar effect, we are at a loss to understand what evidentiary basis the jury had upon which to find proximate cause between the injury and the alleged negligence evidenced by the infraction of the safety rule.
We held in Conroy v. Briley, Fla.App., 191 So.2d 601, that the violation of a city ordinance and a Hotel and Restaurant Commission regulation both requiring handrails in the stairway where the plaintiff in that case fell was “ * * * at the least, prima facie evidence of negligence”. There the evidence showed that plaintiff had attempted to catch on to something to break her fall after she had fallen three or four steps. In O’Donnell v. Barach, 1 Ill.App.2d 157, 116 N.E.2d 912, and in American National Bank v. Wolfe, 22 Tenn. 642, 125 S.W.2d 193, both cited in Conroy v. Briley, supra, as examples of cases where there was recovery for a stairway fall in the absence of a handrail, there was evidence that the respective plaintiffs tried to reach or catch hold of something to steady themselves by, but no handrail was present. In the case at bar, there was no evidence of efforts to grab or catch hold, hence no showing of proximate cause. Accordingly, as to the handrail theory of plaintiff’s case, we must agree that there was no evidence supportive of the jury’s verdict as stated by the trial court in setting aside the verdict.
The other theory advanced by appellant on which liability could have been found by the jury renders it more difficult to uphold the trial court’s finding that there was not presented sufficient evidence to support the jury verdict. This theory of liability is that the decedent struck his head on the ceiling of the staircase and thereafter fell forward striking his head against the floor at the bottom of the steps causing facial contusions and spinal injuries resulting in paraplegia and ultimate death. The correctness of the trial court’s ruling that there was not sufficient evidence to sustain the plaintiff’s case on this theory does not appear to be sustained by the record.
In Deese v. White Belt Dairy Farms, Inc., 160 So.2d 543 (Fla.App.2d 1964), the court held:
“Motions for judgment notwithstanding verdict, like motions for directed verdict, should be resolved with extreme caution since the granting thereof holds that one side of the case is essentially devoid of probative evidence. * * * The movant admits all material facts as attested by his adversary and also admits all inferences of fact favorable to the adversary that reasonably might be drawn from the evidence as a whole. * * * If there is room for difference among reasonable men as to the existence of a material fact sought to be established, or as to a material inference which reasonably might be drawn from established facts, the case should be submitted to the jury. * * * ”
Although there is no direct evidence that decedent hit his head on the ceiling of the stairway, we cannot agree that there was not sufficient evidence presented to the jury from which it could reasonably infer that he did hit his head and fall as a result of the blow. Pictures of the stairway were admitted into evidence showing a run of thirteen stairs from the top of the land *181 ing down to the lobby floor. One witness, a deputy building inspector, testified that at the top of the stairs the measured distance from the step to the ceiling was five feet and nine inches. At that point, of course, the steps start to descend as does the ceiling over the steps, although the steps descend more rapidly than the ceiling so that the further one goes down the stairs, the greater the distance is between the step on which he may be standing and the ceiling overhead.
One of the photographs shows the decedent’s son, Nathaniel, standing at the top of the stairs at the point where the inspector stated the clearance to be only five feet and nine inches. The son’s knees are decidedly bent so as to enable him to fit within the clearance there provided. Another photograph in evidence shows Nathaniel standing on the sixth step from the top and along side of him there is a carpenter’s folding type rule, obviously included in the photograph as a visual demonstration of the subject’s height. Although we have not been benefited by a direct record showing of how tall Nathaniel is, nor the depicted rule for that matter, it does appear that his height is equal to the clearance between the sixth step and the ceiling at that point. The building inspector testified the perpendicular clearance between the nose of the sixth step and the ceiling is seventy-four inches or six feet, two inches. The jury was thus presented with evidence that Nathaniel was six feet, two inches tall. His mother testified that the decedent was “a fraction taller” than Nathaniel.
The sole witness to the fall testified that she saw decedent walking down the steps and could only see up to his forehead from near the bottom of the steps where she was standing at the door of the nearby elevator. She saw him slump and pitch forward and fall. Could the jury infer from the circumstances that the top of his head bumped the ceiling causing him to fall ? We think they could have on this evidence. The evidence shows he was on the seventh or eighth step when he fell and, giving him the benefit of the most favorable inferences, the clearance from the nose of the seventh step to the ceiling, straight up, was six feet, three inches. Thus the jury could have found that the decedent hit his head on the downward sloping ceiling while leaning slightly forward as he descended the steps.
We think the evidence in the record of the physical measurements involved were sufficient to support the jury’s finding that the fall and resultant death were caused when decedent hit his head on the stairway ceiling.
The jury finding of negligence was based on an inference which it could and did find from the circumstances surrounding the incident sued upon. There is no question but that the jury need not have found negligence. It could have gone either way.
There were conflicting inferences of guilt. It was the jury’s function to resolve the conflicts as was held in Voelker v. Combined Insurance Company of America, 73 So.2d 403 (Fla.1954), wherein the court stated:
“The fact that circumstantial evidence is relied upon in a civil action at law does not alter either the rule that it is solely within the province of the jury to evaluate or weigh the evidence or that the burden of establishing a right of recovery by a preponderance of the evidence is upon the plaintiff. Consequently, in such a case if the circumstances established by the evidence be susceptible of a reasonable inference or inferences which would authorize recovery and are also capable of an equally reasonable inference, or inferences, contra, a jury question is presented. * * * ”
Accordingly, it is our view that this case is controlled by the principles announced in Voelker, supra, and a jury question was presented for determination by the jury. In these circumstances, we hold that the granting of the defendant’s renewed motion *182 for directed verdict after trial on the ground that there was not sufficient evidence to support the jury verdict theretofore rendered was erroneous; and, therefore, the entry of final judgment in favor of defendants must be reversed.
The record on appeal reflects that defendant’s posttria.1 motion, by which it renewed its motions for directed verdict made at the conclusion of the plaintiff’s case and at the conclusion of all the evidence, also included as an alternative to such motions for directed verdict a motion for a new trial which the lower court has not yet acted upon. Accordingly, while we reverse the final judgment entered in favor of the defendant herein, we also remand this cause to the trial court so that it may have an opportunity to rule on defendant’s pending alternative motion for a new trial.
We have considered appellant’s contentions regarding the summary judgment entered by the court below in favor of Mid-yette-Moor Insurance Agency, Inc., and find the same to be without substantial merit; and, therefore, that summary judgment is affirmed.
Affirmed in part and reversed in part.
WIGGINTON, C. J., concurs.
JOHNSON, J., dissents. ,